IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES L. MILLER | : | |
| | : | |
| v. | : | Civil No. CCB-04-1129 |
| | : | |
| U.S. FOODSERVICE, INC. ET AL. | : | |
| | : | |

**MEMORANDUM**

This court already has recited the facts of this case in *Miller v. U.S. Foodservice, Inc.,* 361 F.Supp.2d. 470 (D.Md. 2005). In another decision, the court ruled that plaintiff James L. Miller is entitled to advance payment of his reasonable legal fees and expenses, as incurred, to the extent required under his Employment Agreement with defendant U.S. Foodservice ("USF"). *Miller v. U.S. Foodservice,* 405 F.Supp.2d 607 (D.Md. 2005).

Now pending before the court is a motion by Miller demanding the reimbursement of his legal fees. Miller asserts that USF agreed to an extremely broad indemnification provision in the Employment Agreement that requires USF to reimburse Miller for nearly all of his attorneys' fees to date. These fees total more than $260,000. USF, in turn, disputes the manner in which Miller has allocated his legal expenses between claims covered by the Employment Agreement and those claims that allegedly are not, and Miller's failure to apportion attorneys' fees for work common to all the claims and counterclaims. For the reasons that follow, I agree with USF that Miller has not established what legal fees and expenses are properly compensable. Accordingly, I will deny Miller's demand for reimbursement without prejudice, as set forth herein.

1

I.  Background

This court previously held that "Miller is entitled to advance payment of his reasonable legal fees and expenses, as incurred, pursuant to the Employment Agreement." *Miller III,* 405 F.Supp. at 621.[1]  The court ordered Miller to "submit appropriate documentation of his reasonable attorneys' fees no later than January 6, 2006." *Id.*  In response, Miller sent USF's counsel copies of all invoices from the two law firms representing him and demanded payment of $264,182.89 – an amount that includes all time, except 2.6 hours, spent by both law firms on all claims and counterclaims from the outset of this litigation.  *See* Pl. Mem., Ex. 1 (Dec. 29, 2005 Letter from Rosenberg to Webb, with enclosures).

The Employment Agreement provides in pertinent part:

The Company agrees to pay as incurred, to the full extent permitted by law, *all legal fees and expenses which the Executive may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Company, the Executive or others of the validity or enforceability of, or liability under, any provisions of this Agreement, or any guarantee of performance thereof* (including as a result of any contest by the Executive about the amount of any payment pursuant to this agreement), plus in each case interest on any delayed payment at the applicable Federal rate provided for in Section 7872(f)(2)(A) of the Internal Revenue Code of 1986, as amended (the "Code").

Pl.'s Reply, Ex. 1 at App. 5 (emphasis added).

Miller has argued, and the court has found, that "this Agreement" means, unambiguously, the Employment Agreement.  *See Miller III,* 405 F.Supp.2d at 618-19. Thus, the pertinent question is whether there are any fees or expenses incurred by Miller in this litigation that do not

---

[1] The court has published three of its opinions in this case: *Miller v. U.S. Foodservice, Inc.,* 323 F.Supp.2d 665 (D.Md. 2004) ("*Miller I*"); *Miller v. U.S. Foodservice, Inc.,* 361 F.Supp.2d 470 (D.Md. 2005) ("*Miller II*"); and *Miller v. U.S. Foodservice, Inc.,* 405 F.Supp.2d 607 (D.Md. 2005) ("*Miller III*").

arise out of claims or counterclaims involving the validity or enforceability of, or liability under, any provisions of the Employment Agreement.

II.  ANALYSIS

  A.  Allocation of Legal Fees and Expenses

Despite Miller's assertion to the contrary, this case involves matters that are both within and without the ambit of the fee-advancement provision of the Employment Agreement. Thus, Miller is required to allocate his legal fees and expenses between covered and uncovered claims. *See Fasciana v. Elec. Data Sys. Corp.,* 829 A.2d 160, 175 (Del. Ch. 2003). Miller has failed to meet this burden.

  1. Non-Parties to the Employment Agreement

USF asserts that while USF was a party to the Employment Agreement, Royal Ahold and Ahold USA are not. Miller and his counsel have investigated and drafted claims asserted in Counts IV, V, and VI against Royal Ahold and Ahold USA. Those counts assert claims against Royal Ahold and Ahold USA for fraud, negligent misrepresentation, and promissory estoppel, all stemming from Miller's resignation from Royal Ahold's Executive Board ("RVB"). None of these claims, however, relates in any way to the "validity or enforceability of" the Employment Agreement or to USF's "liability" thereunder. Miller counters that Royal Ahold and Ahold USA – USF's parent and affiliate, respectively – "directed and approved USF's non-compliance with the [Employment] Agreement, and they, themselves, have counterclaimed against Miller for his purported failure to properly perform his obligations under the [Employment] Agreement as Chairman, President, and CEO of USF." Pl. Reply 3. While this may be the case, these claims and counterclaims are readily distinguishable from Counts IV, V, and VI of Miller's complaint,

3

all of which concern Miller's resignation from the RVB.  Accordingly, Miller must deduct the expenses associated with Counts IV, V, and VI.

        2.  Other Claims

In Counts I, II, and III, Miller asserts contract claims against Royal Ahold, Ahold USA, and USF.  All three counts are based on the same agreements – the "Post-termination Benefits," the "Severance Payment," and the "RVB Plan Benefits."  Count I asserts a claim for actual breach of the agreements; Count II asserts a claim for anticipatory breach of the agreements; and Count III asserts a claim for declaratory judgment concerning the same agreements.

While the "Post-termination Benefits" are synonymous with the Employment Agreement, the "Severance Payment" and the "RVB Plan Benefits" are separate agreements between Miller and Royal Ahold and Ahold USA.  Indeed, by Miller's own allegations, claims for these benefits are based on commitments made to him by representatives of Royal Ahold in May 2003 and, with reference to the RVB Plan Benefits, separate letters dated October 23, 2002 and November 20, 2002, to which USF is not a party.  *See* Complaint, Ex. 3 and 4.  Miller's contract claims in Counts I, II, and III are therefore based in substantial part on agreements other than the Employment Agreement.  As such, Miller must deduct the expenses associated with claims based on the Severance Plan and the RVB Plan Benefits.

USF also asserts that Miller should deduct from his expenses the costs associated with responding to Counts I and II of the counterclaims against him.  According to Miller, "USF filed counterclaims against [him], alleging that he had breached duties to USF arising under the [Employment] Agreement."  Pl. Mem. 4.  This statement is incomplete, however.  In Counts I and II,  USF and Royal Ahold allege that Miller breached the fiduciary duties of care, good faith,

4

and loyalty that he owed to USF as a director and officer. Defendants assert that these duties were imposed on Miller by the common law of Delaware, independent of any duties imposed by the Employment Agreement. Moreover, USF and Royal Ahold seek damages well beyond the forfeiture or restitution of any compensation or other benefits that Miller was paid under the Employment Agreement. To be more precise, USF and Royal Ahold seek to recover the "substantial legal and accounting fees and costs that Royal Ahold and USF have incurred in connection with internal investigations, federal criminal and securities investigations, and the defense of civil actions" caused by Miller's breaches of his fiduciary duties. Countercl. ¶¶ 30(c), 34(c). None of these types of damages is related to the Employment Agreement. Accordingly, most, if not all, of the allegations of Counts I and II of the defendants' counterclaim fall outside the fee entitlement.

### 3. Wrongful Termination

USF also asserts that Count VII of Miller's amended complaint alleging wrongful discharge does not arise under the Employment Agreement. Rather, this count sounds in tort, not contract. On this issue, however, I agree with Miller. Regardless of whether his wrongful discharge claim lies in contract or tort, the employment from which he was terminated, and the compensation and benefits which he was denied, are created and defined in the Employment Agreement. But for the allegedly wrongful termination of his employment, Miller had an expectation that he would continue to enjoy the benefits of his employment under the Employment Agreement. Thus, his wrongful discharge claim is part of a "contest" concerning the "validity or enforceability of, or liability under, the provisions of [the] Agreement." As such, I find that the wrongful termination claim is covered at least in substantial part by the fee-

advancement provision of the Employment Agreement.

  B. Miller's Chronological Approach

Miller's claims fall into three categories: (1) contract claims against all three defendants (Counts I, II, and III); (2) claims against Royal Ahold and Ahold USA only (Counts VI, V, and VI); and (3) the wrongful discharge claim against USF (Count VII).  Miller, however, does not allocate his expenses to each of these specific claims.  Instead, Miller tries to justify his demand for reimbursement for all fees for all work using a chronological approach to the phases of litigation.  Miller divides the proceedings in this case into five "discrete phases":

 (1) 2/13/04 - 4/12/04 investigation, drafting and filing the complaint;

 (2) 4/12/04 - 6/30/04 litigating Miller's motion to remand after USF's removal of this case to federal court;

 (3) 5/6/04 - 3/29/05 litigating Miller's motion to dismiss USF's counterclaims;

 (4) 8/17/05 - 12/20/05 litigating USF's motion to dismiss Miller's wrongful discharge claim; and

 (5) 3/25/05 - present litigating Miller's motion for partial summary judgment on legal fees issue.

Pl. Mem. 2.

  1. Phase 1

Miller is entitled to legal fees and expenses incurred in phase 1, but only insofar as his attorneys investigated claims and drafted portions of the complaint that involve the enforceability of, or USF's liability under, the Employment Agreement.  Thus, Miller is not entitled to any legal fees or expenses relating to the investigation or drafting of Counts IV, V,

and VI of the complaint. He is entitled, at most, to a portion of the legal fees and expenses relating to Counts I, II, and III, but he has failed to identify any of the services in connection with those counts for the claims against USF relating to the Employment Agreement as opposed to claims against other defendants for breaches of other contracts.

   2. Phase 2

USF claims that litigation concerning USF's removal of this case from state court is not within the "any contest" language of the Employment Agreement because the removal was based on ERISA preemption of the RVB Plan, which USF asserts is not within the ambit of the Employment Agreement's covered benefits. Importantly, however, USF's April 12, 2004 Notice of Removal asserted that ERISA preempted the RVB Plan and the "USF Pension Benefit and USF 401(k) Match 02 benefit claimed by Miller." *See* Pl. Reply, Ex. 2 at 3-4. These USF benefits are expressly part of USF's obligations to Miller under the Employment Agreement. *See* Pl. Reply, Ex. 1 at App. 1. As such, the removal action did, to some extent, concern benefits covered by the Employment Agreement, so at least a portion of Miller's legal expenses for phase 2 should be reimbursed.[2]

   3. Phases 3 and 5

Where work is performed on common issues that relate to both the covered and uncovered claims, the court should apportion the amount of recoverable fees. *Fasciana,* 829 A.2d at 175, n.49. Phase 3 is for work performed on Miller's motion to dismiss the counterclaims. As stated above, Miller is not entitled to reimbursement for his defense against

---

  [2] Despite the reference to the USF benefits in the Notice of Removal, however, the parties' legal memoranda focused primarily on the RVB Plan.

Counts I and II of the counterclaims because they are not related to the Employment Agreement. Consequently, Miller should reasonably apportion his fees under phase 3.

Phase 5 involves Miller's motion for attorneys' fees. Because only a portion of the attorneys' fees are subject to advancement, such fees also need to be apportioned.

4. Phase 4

USF asserts that Miller is not entitled to any of the legal fees and expenses incurred in phase 4 because his wrongful discharge claim has nothing to do with the validity or enforceability of the Employment Agreement or with USF's liability thereunder. For the reasons described above, I disagree, and therefore find that Miller's phase 4 attorneys' fees are subject to reasonable reimbursement.

In conclusion, the court's earlier ruling concerning the advancement of attorneys' fees did not give Miller a "blank check" by which USF would finance the prosecution of claims, and the defense of counterclaims, that have nothing to do with any provision of the Employment Agreement. USF contracted with Miller to advance certain fees, but only fees within the scope of the fee provision. Advancement of fees beyond that contractual right would require USF to bear a greater risk of non-repayment than it agreed to bear. *Fasciana,* 829 A.2d at 157 (stressing "the unreasonableness of requiring a corporation ... to bear a credit risk it did not contract to assume."). Miller's primary argument seems to be that it would be difficult to apportion his attorneys' fees between claims that are covered by the Employment Agreement and those that are not. Yet as the *Fasciana* court noted, "lawyers will know the time they spend" developing facts to show that defendants breached the Employment Agreement and wrongfully discharged Miller. *Fasciana,* 829 A.2d at 176; *cf. May v. Bigmar,* 838 A.2d 285, 289 (Del. Ch. 2003).

Miller's attempt to recover for all but 2.6 hours of his attorneys' time is not reasonable. Accordingly, Miller's "Demand for Reimbursement of Legal Fees" will be denied, without prejudice to renewal in an amount reflecting allocation and apportionment consistent with this Memorandum.

    A separate order follows.

    __April 18, 2006__                          __/s/__
        Date                                       Catherine C. Blake
                                                 United States District Judge