**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                              |   |                          |
|------------------------------|---|--------------------------|
|                              | : |                          |
| JAMES L. MILLER              | : |                          |
|                              | : |                          |
| v.                           | : | Civil No. CCB-04-1129    |
|                              | : |                          |
| U.S. FOODSERVICE, INC. ET AL.| : |                          |
|                              | : |                          |
|                              | : |                          |

**MEMORANDUM**

The facts of this case were stated in *Miller v. U.S. Foodservice, Inc.,* 361 F.Supp.2d 470 (D.Md. 2005) ("*Miller I*").  In a second opinion, the court ruled that plaintiff James L. Miller is entitled to advance payment of his reasonable legal fees and expenses, as incurred, to the extent required under his Employment Agreement with defendant U.S. Foodservice ("USF").  *Miller v. U.S. Foodservice,* 405 F.Supp.2d 607 (D.Md. 2005) ("*Miller II*").  Subsequently, the court denied Miller's demand for reimbursement of nearly all of the legal fees and expenses he has incurred to date, which total more than $260,000, on the ground that Miller had not established what legal fees and expenses are properly compensable.  *Miller v. U.S. Foodservice,* 2006 WL 1042361 (D.Md., April 18, 2006) ("*Miller III*").  Miller was permitted to resubmit appropriate documentation of his reasonable legal fees and expenses, consistent with criteria set forth by the court.

On May 18, 2006, counsel for Miller sent a letter to the court setting forth his revised demand for legal fees in the amount of $200,401.68.  On June 13, defendant USF filed a response to Miller's latest request contending that Miller once again overstated the legal fees that USF must reimburse pursuant to his Employment Agreement.  Miller filed a reply on June 26,

and USF filed a surreply on July 5.  For the reasons that follow, the court will require Miller to

make further reductions in the amount of legal fees and expenses for which he seeks

reimbursement from USF.

I.      General Problems with Miller's Submission and Time Records

        USF has identified several global defects in the manner in which Miller presented his

revised fee request.

        First, Miller's claim for attorneys' fees is replete with entries seeking recovery for items

such as meetings, telephone calls, emails, conferences, etc., without any description of the

subject matter.  It is thus impossible to determine which tasks fall within the scope of the

Employment Agreement, and which do not.  For example, a February 17, 2004 entry from

Benjamin Rosenberg simply says "Emails; Telephone call from Paul Sandler," without

identifying the subject of the emails or the telephone call.  Many of the other entries are similarly

vague and incomplete.  Miller's law firms knew at the outset of this litigation that certain fees

would be recoverable, and others would not.  Thus, the fact that they did not accurately track

their time should be held against Miller, not USF.

        Second, Miller's law firms engaged in block-billing, *i.e.,* a list of multiple tasks

performed within a single time entry that does not identify the portion of work performed on

each included task.  In many instances, Miller's attorneys block-billed tasks that include time

which is plainly outside the fee provision or, in the alternative, they included time that, because

of its vague description, may or may not be within the fee provision.  As a result, it is impossible

to tell (1) how much time within the block entry was spent on uncovered work; (2) whether the

vaguely described tasks, such as "emails," were in whole or in part related to the uncovered

work; and (3) how much, if any, of the vaguely described task was spent on covered work. While block-billing time might not, standing alone, create problems, when combined with the vague task descriptions, the net result is that the court is required to derive a time based on an unknown percentage of an unknown percentage.

Third, Miller seeks reimbursement for work that falls within a "phase," even when work within that phase is not subject to reimbursement.  For example, Miller seeks 100 % of his fees for the 13 months he refers to as "phase 4," arguing that virtually all the work on this case relates to Miller's wrongful termination claim.  The time entries, however, belie this assertion.  Indeed, many of the entries do not relate to the wrongful termination claim.  Thus, the court agrees with USF that Miller's use of "phases" to avoid a time-by-time-entry fee request is improper.

Fourth, Miller seeks reimbursement for work unrelated to any covered claim, including the following:

• In his initial request, Miller sought reimbursement for legal work performed on behalf of his sons.  In his reply, Miller concedes that this work should be excluded.

• Miller seeks reimbursement for his attempts to secure Exec-U-Care benefits, which are health benefits Miller is entitled to under the Employment Agreement.  Miller contends that these time entries are recoverable, because they relate to Miller's attempts to obtain USF's cooperation in securing thousands of dollars of unpaid Exec-U-Care benefits to Miller and his family.  USF contends that it did provide Miller with the Exec-U-Care benefits required by the Employment Agreement.  Instead, the coverage issues – which primarily related to untimely submission of claims – were of Miller's own making. Accordingly, time entries relating to the Exec-U-Care benefits and other health insurance

benefits should be excluded.  It is clear that USF provided the benefits required by the Employment Agreement; the dispute appears to be between Miller and the insurer over the scope of coverage.

• Miller seeks reimbursement for work related to his D&O insurance.  According to Miller, "D&O coverage was a contractual benefit USF provided to Miller as an officer of USF." Pl. Reply 5.  While this may be the case, D&O coverage was not required as part of the Employment Agreement, so USF should not be required to reimburse Miller for work related to D&O coverage.

• Miller seeks reimbursement for work related to Royal Ahold and defendants other than USF.  Miller should not be reimbursed for this work, for the reasons stated in the *Miller III* opinion at 2.

• Miller seeks reimbursement for his counsels' communications with his criminal defense attorney.  He also seeks reimbursement for his counsels' monitoring of related securities litigation.  In light of the fact that USF filed counterclaims against Miller alleging he breached his duties under the Employment Agreement, (*i.e.,* Count III (breach of contract), Count IV (unjust enrichment), Count V (mutual mistake), and Count VI (waste)), it is appropriate for Miller to be reimbursed for these fees, as they relate to his defense.

• USF also claims that Miller seeks reimbursement for work on matters tangentially related but extraneous to the Employment Agreement.  USF further asserts that Miller seeks reimbursement for work related to other matters – beyond the securities litigation – that are unrelated to Miller's claims under the Employment Agreement.  Miller, for example,

4

seeks fees related to his counsels' discussions with the *Washington Post* and the *Baltimore Sun*.  It is not apparent how these discussions relate to Miller's claims under the Employment Agreement.  Likewise, Miller seeks reimbursement for his counsels' research into fiduciary duty issues, which the court already has held are unrelated to the Employment Agreement.  These are just two of the many specific objections – the majority of which have merit – that USF makes to Miller's fee request.

Finally, USF objects to the fact that Miller hired two law firms – Shapiro, Sher, Guinot & Sandler and Rosenberg Martin Funk Greenberg LLC – to prosecute his case.  According to USF, neither law firm appears to have a discrete function or unique expertise, so their dual involvement in the case resulted in a duplication of work.  USF asserts that this redundancy of effort resulted in an unreasonable fee.  Miller counters that nothing in the Employment Agreement precludes him from hiring two firms.  According to Miller, the issue is whether the fees are reasonable, not how many lawyers worked on the case.  The court tends to agree with Miller on this point.  USF has not demonstrated that the total number of hours the firms spent on each task was unreasonable.  Accordingly, Miller's fee award will not be reduced simply because he hired two law firms.

Based on the foregoing, USF asks for a substantial reduction in the fee award.  Initially, USF argues that block-billed entries which commingle time unrelated to the litigation with vaguely worded tasks should be excluded *in toto*.  In addition, USF would have the court construe the vagueness in both time and subject matter descriptions against Miller in those instances where the time entries make it impossible to allocate fees to potentially covered work.  Any attempt to implement this relief, however,  would be arbitrary in the first instance, and

administratively difficult in the second, requiring review of each of the time entries to determine whether they were vague and, thus, whether they should be excluded in whole or in part.

USF also asks the court to make an across-the-board percentage reduction to account for problems such as work that is unrelated to the Employment Agreement, block-billing practices and vague descriptions, and duplication that allegedly resulted from Miller's retention of two law firms, proposing a percentage of 20 to 30%.  The court will adopt this alternative recommendation and impose a fee reduction of 20%.  This is on the lesser end of USF's proposed reduction, reflecting the fact that USF did not find show significant duplication of work between Miller's two law firms.  While this approach also is somewhat arbitrary, it is the direct result of Miller's attorneys' time-keeping practices.  Miller has had two opportunities to justify his request for attorneys' fees, and on both occasions, he has submitted a back-of-the-envelope calculation that is not sufficiently supported by the billing records.  Thus, any ambiguity in the fee request will be construed against Miller.

II      The Phase Approach

In addition to its global objections to Miller's fee request, USF also objects to Miller's claims for each phase of the litigation.

1.      Phase 1

Phase 1 encompasses the investigation, drafting, and filing of the Complaint.  The court previously ruled that Miller was entitled to no fees or expenses for work on three claims (Counts IV, V, and VI) because they did not "involve the enforceability of, or USF's liability under, the Employment Agreement." *Miller III* at 6.  Of the remaining three claims (Counts I, II, and III), Miller is "entitled, at most, to a portion of the legal fees and expenses relating to Counts I, II, and

III." *Id.* at 7.

Miller seeks reimbursement for one-third (33%) of all legal fees incurred in Phase 1. Miller is not entitled, however, to fees for three of the six counts in the complaint. Of the three remaining claims, Miller is entitled to only a portion of his legal fees, because each of these counts was brought against three corporate defendants. Assuming that the USF-related work on these three counts was one-third of the work, then Miller should recover one-sixth (17%) of the fees incurred in Phase 1, *i.e.,* for work on 50 % of the claims attributable to one-third of the parties.

Miller, in turn, argues that "75% of the factual allegations relate to USF," so "a 33% reimbursement for Phase 1 is well within the zone of reasonableness." But Miller's billing records do not support this allocation. Indeed, it is impossible to tell how much time Miller's lawyers spent researching and drafting the claims against USF as compared to the other defendants. As such, Miller's fees for Phase 1 will be reduced to 17%.

2.      Phase 2

Miller has asked for 50% of the fees incurred during litigation of the removal phase. According to USF, Miller's claim is founded on the incorrect assumption that one of the two bases for removal was an ERISA benefit arising under the Employment Agreement. USF alleges that by the time this litigation commenced, Miller had relinquished the USF Pension Benefit and USF 401(k) Match 02 Benefit (the "Relinquished USF Benefit") in order to receive the RVB Plan Benefit. *See* Comp., Ex. 3 (October 23, 2002 letter from Cees H. van der Hoeven, President and CEO of Royal Ahold, to James Miller, confirming Miller's participation in the RVB Benefit Plan and stating that current participation in USF Supplemental Executive Retirement Plan was

cancelled).  Thus, because Miller no longer was a beneficiary and could not recover the Relinquished USF Benefit by proving breach of the Employment Agreement, the relinquished USF benefit had nothing to do with the Employment Agreement at the time it was asserted as a ground for removal.  USF acknowledges, however, that it did not raise this issue in prior filings and, moreover, one of the benefits cited in the Notice of Removal appears on the face of the Employment Agreement.  Thus, contrary to USF's objection, Miller should recover some of his legal fees for objecting to the removal of this case to federal court.

That being said, the parties' briefing on Miller's motion to remand did not once mention the Relinquished USF Benefit; instead, the only pension benefit discussed in Miller's motion to remand, the defendants' opposition, and Miller's reply was the RVB Plan Benefit.  Thus, if Miller is entitled to some attorneys' fees under Phase 2, USF argues that it should be limited to 10%.  The court finds this to be a reasonable allocation.  Because the majority of the litigation concerned a benefit outside the Employment Agreement, Miller will be limited to 10% of the legal fees and expenses he incurred in Phase 2.

3.      Phase 3

USF asserted six counterclaims against Miller.  The court's prior opinion ruled that Miller could only recover legal fees associated with defending four of these counterclaims, because the breach of fiduciary duty alleged in Counts I and II did not relate to the Employment Agreement.  Miller therefore seeks two-thirds (67%) of his Phase 3 costs.  USF argues that this amount should be reduced to 25%.

First, USF asserts that because Count IV (unjust enrichment) was unrelated to the Employment Agreement as a matter of law, Miller should not be able to recover his legal fees

associated with defending this claim.  *See Miller I,* 361 F.Supp.2d at 484 ("In Maryland, unjust enrichment claims are viable only when an express contract does not exist between the parties."). Count IV, however, is based on Miller's compensation and benefits under the Employment Agreement.  Thus, when Miller initially had to defend himself against this claim, the Employment Agreement appeared relevant, even if the court subsequently found that it was not. Because Miller incurred fees based on this assumption, he should be reimbursed for his costs.

Second, USF asserts that the damages it seeks under the Employment Agreement are "minuscule compared to the damages Defendants seek for Miller's breaches of his fiduciary duties."  Def. Resp. 21.  As such, USF argues that Miller's recovery should be limited to 25% of the fees for Phase 3.  The court disagrees with this assessment.  The legal expenses incurred by Miller to defend against each of the counterclaims are not necessarily proportional to the damages sought by USF.  USF introduces no evidence that Miller's lawyers spent more time on Counts I and II than on the other counterclaims because USF sought larger damages for those counts.  As such, Miller may recover 67% of the legal expenses associated with Phase 3.

4.      Phase 4

Miller seeks 100% of all fees and expenses for this phase, which covers litigation over his "wrongful termination" claim.  In effect, Miller seeks reimbursement for *all* the legal fees he incurred during the 13-month period from March 2005 to April 2006.  The problem with Miller's request is that many of the fees he incurred during this period are not related to litigation of the wrongful termination claim.  For example, Miller seeks reimbursement for issues concerning D&O insurance, work on a scheduling order, medical expenses, review of a motion in the securities action, document requests and other discovery, class action discovery, benefits for

Miller's ex-wife, the bar order in the securities action, responses to discovery, issues with

CIGNA, attorneys' fees, and issues with Exec-U-Care.  Many of these issues (*e.g.,* Exec-U-Care,

CIGNA, D&O insurance) are not subject to reimbursement, regardless of the litigation phase, for

the reasons described above.  Others certainly do not belong in Phase 4.  Miller's only response

is that while some of these expenses should not have been included in Phase 4, they nevertheless

should be fully reimbursed.  The court disagrees.  Miller should not be permitted to use Phase 4

as a "catch-all" for expenses that are not otherwise subject to reimbursement.  Though any

percentage reduction will be inherently arbitrary, the only alternative would be to identify each

time entry that does not belong in Phase 4, and then exclude those entries.  This would be

administratively burdensome.  The court disagrees with USF's recommendation to reduce

Miller's Phase 4 recovery to 80%, however.  Many of the entries that are not related to Phase 4 –

such as the D&O coverage and the Exec-U-Care and other medical benefits – should be excluded

across the board, because they are not related to the Employment Agreement.  Their exclusion,

however, is already addressed by the 20% reduction in Miller's final fee award.  Other fees –

such as those related to counsels' discussions with Miller's criminal and securities lawyers – are

subject to reimbursement, even though they are included in the wrong phase of litigation.  Thus,

USF's 80% figure is too low.  Instead, USF will be required to reimburse Miller for 90% of his

fees and expenses in Phase 4.

     5.     Phase 5

     Phase 5 concerns litigation over Miller's right to be reimbursed for his legal fees under

the Employment Agreement.  Miller seeks 65% of his total legal fees, which is a figure he

derived from the ratio of the reimbursable to non-reimbursable fees for Phases 1 through 4.  The

ratio will change, however, based on the amendments made to Miller's fee request listed above.

The new ratio – which incorporates these revisions – is approximately 50%. USF contends that

this percentage should be reduced further, because virtually all of the costly and time-consuming

litigation over attorneys' fees was entirely of Miller's own making.  There is merit to USF's

argument.  Miller's original request – which was based on all but 2.6 hours of his attorneys' time

– was overreaching and unreasonable.  The request now pending before the court suffers from its

own set of shortcomings, notably vague and imprecise time entries and requests for fees that are

not covered by the Employment Agreement.  This has resulted in the needless expenditure of

time by both the court and the parties.  Accordingly, Miller's fee award for Phase 5 will be

reduced by an additional 10%, for a total of 40%.

In summary, USF will reimburse Miller based on the percentages and amounts set forth

in the table below.

|  | Miller's Total Fees and Expenses | Amount Claimed by Miller | Court-Mandated Percentage Allocation | Net Amount |
|---|---|---|---|---|
| Phase 1 | $53,850.08 | $17,948.23 | 17% | $9,154.51 |
| Phase 2 | $47,786.71 | $23,893.35 | 10% | $4,778.67 |
| Phase 3 | $69,571.76 | $46,383.50 | 67% | $46,613.08 |
| Phase 4 | $69,281.10 | $69,281.10 | 90% | $62,352.99 |
| Phase 5 | $65,499.31 | $42,895.50 | 40% | $26,199.72 |
| TOTAL | $305,988.96 | $200,401.68 |  | $149,098.97 |

This net amount will be further reduced by 20% to account for improper billing entries and other

defects in the billing records of the two law firms.  Accounting for this adjustment, USF will be

required to reimburse Miller for $119,279.18.

11

Future Fee Submissions

       Miller should have undertaken a three-step review of his attorneys' time records.  This analysis would proceed by, first, excluding work that has nothing to do with this case or with a covered claim; second, allocating specific time entries between covered and uncovered claims where clearly evident; and, third, identifying the time entries that describe work common to all claims and making a reasonable apportionment of those entries.  To date, Miller has skipped the first and second steps and gone directly to allocation of *all* the time.  In the future, however, Miller should present his fee award requests to USF based on this three-step process, and his attorneys should keep track of their time in a manner that makes it possible to allocate time between covered and uncovered claims.  This means that their entries should describe the matter at hand and, to the extent practicable, the entries should not be in a block-billed format.  If Miller fails to submit his fee requests in this manner, the court may deny any future request in its entirety.

       A separate Order follows.

August 30, 2006                               /s
Date                                          Catherine C. Blake
                                                United States District Judge